OPINION.
{¶ 1} Plaintiff-Appellant, the State of Ohio, appeals a Seneca County Common Pleas Court decision which ordered the exclusion of three witnesses not divulged by the state until the day before trial and precluded the admission of a firearm and testimony related thereto due to the state's extended failure to supplement misleading discovery responses. On appeal, the state argues that the sanctions imposed are not commensurate with any purported discovery violations. Considering the circumstances presented, we cannot say that the trial court abused its discretion in imposing the subject sanctions. Accordingly, we affirm the judgment of the trial court.
 {¶ 2} Facts and procedural circumstances relevant to issues raised on appeal are as follows: On April 24, 2002, an altercation involving a firearm and a pool cue occurred between Defendant-Appellee, Jon Decker, Glen E. Loy, and Antonio Brown. Decker and Loy were subsequently arrested and charged with the felonious assault of Brown.
 {¶ 3} An April 25, 2002 facsimile from the Fostoria Prosecutor's Office indicates that hair, blood, and DNA testing had been requested from the Bureau of Criminal Investigation and Identification ("BCI").
 {¶ 4} On May 30, 2002, the state submitted the firearm and other physical evidence to the BCI, requesting latent prints and operability testing on the firearm and latent prints and chemical analysis of green vegetable matter. The submission sheet did not request "microanalysis," which would include DNA, blood, or hair testing.
 {¶ 5} On June 5, 2002, the state included in its discovery response the April 25, 2002 facsimile, which reflected that DNA, blood, and hair testing were being conducted, but did not include the BCI submission sheet, which failed to request such testing.
 {¶ 6} On October 24, 2002, all requested testing was completed by the BCI. A BCI representative spoke with a prosecutor that day regarding the testing of the firearm. A corresponding report was prepared October 25, 2002.
 {¶ 7} On October 25, 2002, Appellee moved to have the Monday, October 28, 2002 trial continued until February 24, 2003, because "defense counsel is awaiting important forensic evidence that has not yet been provided by the State of Ohio." The motion was subsequently granted.
 {¶ 8} On February 20, 2003, Appellee moved for dismissal on speedy trial grounds, arguing that the state mislead the defense into requesting a continuance and thereafter failed to produce promised discovery material. Appellee argued that the misleading disclosure would necessitate an additional continuance to arrange testing, if still possible, thereby placing the trial beyond speedy trial limitations.
 {¶ 9} On February 21, 2003, the Friday before trial, at 3:30 p.m., the state supplemented its discovery response, identifying four previously undisclosed witnesses, the May 30, 2002 BCI submission sheet, the June 19, 2002 BCI marijuana analysis, the October 24, 2002 BCI firearm report, and a facsimile dated February 20, 2003 at 5:30 p.m. from the BCI indicating that "[n]o reports were issued with respect to serological/ biological evidence in this case." Later that day, Appellee's motion to dismiss for speedy trial grounds came on for hearing. During the hearing, Appellee alternatively moved to exclude the previously undisclosed witnesses and all evidence relating to the firearm. Appellee argued that the state had misled the defense throughout the discovery process and prejudiced his right to prepare a complete defense. Upon consideration of the arguments and evidence presented, the court denied the request for dismissal, but granted the request to exclude the undisclosed witnesses and all evidence relating to the firearm. Thereafter, the state represented that the court's ruling had not fatally impaired its case and that the state was prepared to proceed to trial on Monday.
 {¶ 10} On Monday, February 24, 2003, the state certified that it was unable to proceed without the excluded evidence.
 {¶ 11} The state brings the instant appeal, pursuant to Crim.R. 12(K), presenting three assignments of error for review. Because the assigned errors involve interrelated factual and legal issues, we have elected to consolidate our review of said errors.
 ASSIGNMENT OF ERROR NO. I The Trial Court erred in excluding witnesses John T. Heile, ScottDobransky, and William Mahan.
 ASSIGNMENT OF ERROR NO. II The Trial Court abused its discretion by employing the harshest penaltypossible in the it heard no testimony, took no evidence, received nostipulations on the record at a hearing, and then provided no rationalefor its decision in its judgment entry or on the record excluding thestate's evidence and witnesses.
 ASSIGNMENT OF ERROR NO. III The Trial Court erred by failing to state its essential factualfindings on the record when it excluded the use of evidence relating tothe semi-automatic gun, magazine and bullets and any reference theretoand the exclusion of witnesses John T. Heile, Scott Dobransky, andWilliam Mahan is without court-stated basis on the record.
 {¶ 12} In its assignments of error, the state contends that discovery sanctions could not be imposed in the absence of either a motion in limine or motion to compel discovery. The state additionally argues that the court failed to state its essential findings on the record pursuant to Crim.R. 12(E). Finally, the state claims that the sanctions imposed are excessive, considering the nature of the violation.
I. Necessity of Motion to Compel/Motion in Limine:
 {¶ 13} In City of Lakewood v. Papadelis,[1] the Ohio Supreme Court rejected the proposition that a motion to compel (or for that matter, a motion in limine) is a necessary prerequisite to discovery sanctions, stating:
It is apparent from the plain language of this section that the trialcourt has discretion to impose sanctions when " * * * it is brought tothe attention of the court that a party has failed to comply with thisrule or with an order issued pursuant to this rule * * *." Therefore, thefiling of a motion to compel discovery is not a prerequisite to the trialcourt's imposing sanctions pursuant to Crim.R. 16. This holding isconsistent with the purpose of the discovery rules. As this court statedin State v. Howard (1978), 56 Ohio St.2d 328, 333, 10 O.O.3d 448, 451,383 N.E.2d 912, 915, "[t]he philosophy of the Criminal Rules is to removethe element of gamesmanship from a trial." The purpose of discovery rulesis to prevent surprise and the secreting of evidence favorable to oneparty. The overall purpose is to produce a fair trial. State v. Mitchell(1975), 47 Ohio App.2d 61, 80, 1 O.O.3d 181, 192, 352 N.E.2d 636, 648.[2]
II. Sufficiency of Findings — Crim.R. 12(E):
 {¶ 14} As to whether the trial court failed to sufficiently articulate its essential findings supporting the imposition of sanctions, Crim.R. 12(E) states:
 {¶ 15} Ruling on motion. A motion made before trial other than amotion for change of venue, shall be timely determined before trial.Where factual issues are involved in determining a motion, the courtshall state its essential findings on the record.[3]
 {¶ 16} Crim.R. 12(E) mandates, by the use of the word "shall," that the trial court state its findings on the record.[4] In the absence of such findings, a reviewing court cannot properly review the ruling of the trial court.[5] Undoubtedly, the issue of whether the state complied with discovery involves a factual determination by the trial court. Thus, the court was required to state its findings of fact on the record, even if not timely requested by the state.[6]
 {¶ 17} After a lengthy and interactive discussion with counsel regarding the facts and circumstances surrounding Appellee's motions and the prejudice occasioned by the delayed disclosure, the trial court concluded: "Let the record be clear, I find that the supplementation of discovery marked as Defendant Exhibit A certainly was not timely. It appears from the document itself that the information was in the possession of the State back in October. And I just think it's too late." The colloquy between court and counsel and resulting determination illustrate that the court excluded the evidence because it found that the state's failure to comply with Crim.R. 16 prejudiced Appellee's ability to attack weaknesses in the state's case or to effectively present a credible defense. Considering the foregoing statement in light of the discussion which preceded it, we find that the court sufficiently stated the essential findings in support of its determination.
III. Imposition of Sanctions — Crim.R. 16(E):
 {¶ 18} Appellee requested discovery pursuant to both Crim.R. 16(B)(1)(c) and Crim.R. 16(B)(1)(f). Crim.R. 16(B)(1)(c) provides:
(c) Documents and tangible objects. Upon motion of the defendant thecourt shall order the prosecuting attorney to permit the defendant toinspect and copy or photograph books, papers, documents, photographs,tangible objects, buildings or places, or copies or portions thereof,available to or within the possession, custody or control of the state,and which are material to the preparation of his defense, or are intendedfor use by the prosecuting attorney as evidence at the trial, or wereobtained from or belong to the defendant.
Crim.R.16(B)(1)(f) states:
(f) Disclosure of evidence favorable to defendant. Upon motion of thedefendant, before trial the court shall order the prosecuting attorney todisclose to counsel for the defendant all evidence, known or which maybecome known, to the prosecuting attorney, favorable to the defendant andmaterial either to guilt or to punishment. * * *
Crim.R. 16(B)(2), limits the scope of discovery:
(2) Information not subject to disclosure. Except as provided insubsections (B)(1)(a), (b), (d), (f), and (g), this rule does notauthorize the discovery or inspection of reports, memoranda, or otherinternal documents made by the prosecuting attorney or his agents inconnection with the investigation or prosecution of the case, or ofstatements made by witnesses or prospective witnesses to state agents.
 {¶ 19} Crim.R. 16(E)(3) provides a range of sanctions which may be imposed upon a noncomplying party:
(3) Failure to comply. If at any time during the course of theproceedings it is brought to the attention of the court that a party hasfailed to comply with this rule or with an order issued pursuant to thisrule, the court may order such party to permit the discovery orinspection, grant a continuance, or prohibit the party from introducingin evidence the material not disclosed, or it may make such other orderas it deems just under the circumstances.
 {¶ 20} Crim.R. 16(E)(3) permits "a trial court a wide scope of discretion in determining the sanction."[7] In fashioning a proper sanction, a trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must generally impose the least severe sanction that is consistent with the defendant's rights and purpose of the rules of discovery.[8] However, "when applying an abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court but must be guided by a presumption that the findings of the trial court are correct."[9] An abuse of discretion occurs when a court renders a decision that is arbitrary, unreasonable or unconscionable.[10]
"[T]he result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias."[11]
 {¶ 21} With regard to the application and enforcement of Crim.R. 16, the Ohio Supreme Court has noted:
* * * This rule is applied inconsistently throughout the state,resulting in greater costs to the criminal justice system in areas wherediscoverable material is not readily made available. * * * A more openand uniform discovery process would reduce the need for courtintervention in the discovery process, facilitate settlement of cases,and result in better case preparation, all of which would reduce the costof providing representation to indigent defendants.[12]
More recently, the Ohio Supreme Court has observed that "much could be said concerning Crim.R. 16 and the theory of `open file' discovery of the type authorized by local rule * * *."[13] Furthermore, the court has specifically directed that "there be strong enforcement of Crim.R. 16(B)(1)(c) by the trial courts in order to effectuate the purposes of the rule and, thereby, serve the ends of justice, judicial economy and the avoidance of surprise."[14]
 {¶ 22} A prosecutor, representing the State of Ohio, must be held to a higher standard of professionalism.[15] If a prosecutor withholds evidence or delays discovery for an unreasonable amount of time in advance of trial, a defendant is denied all effective use of it, because appellate and post-conviction remedies can never recover the value lost.[16] For Crim.R. 16 to have meaning, it must be applied and enforced at the trial level, when avenues for investigation are still open and the defendant is still clothed with the presumption of innocence.[17]
 Society wins not only when the guilty are convicted but when criminaltrials are fair; our system of the administration of justice suffers whenany accused is treated unfairly. An inscription on the walls of theDepartment of Justice states the proposition candidly for the federaldomain: "The United States wins its point whenever justice is done itscitizens in the courts."[18]
 {¶ 23} As outlined above, the state provided a facsimile to the Appellee on June 5, 2002, reflecting that fingerprint, hair, blood, and DNA testing were being conducted. However, the BCI submission sheet clearly indicates that the box for "microanalysis," which the state conceded was the designation for hair, blood, and DNA testing, had not been checked. As of October 24, 2002, all requested testing, except for latent fingerprint analysis, had been completed. The following day, the defense requested a continuance relying upon the state's representations that microanalysis and fingerprinting were being completed. Although the state claimed to lack knowledge of the testing reports, a prosecutor admitted that he had spoken with a BCI representative on October 24, 2002. Moreover, knowledge of the substance of the initial BCI request and completion of testing must be imputed to the state.[19] Finally, the state offered no excuse as to why latent fingerprint analysis was not conducted as requested or completed before the firearm was subjected to other testing. In any event, the state offered no reasonable excuse for the four-month failure to report the test results or otherwise make the firearm available or witnesses known to the defense.
 {¶ 24} In lieu of assessing the time occasioned by the delayed disclosures against the state for speedy trial purposes or imposing the time necessary for another continuance against the state, thereby forcing dismissal of the case, the court elected to exclude all evidence related to the firearm and previously undisclosed witnesses from trial and ordered trial to proceed as scheduled. Considering the circumstances presented and alternative sanctions, we cannot say that this determination was so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias. Accordingly, the state's first, second, and third assignments of error are overruled.
 {¶ 25} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, the judgment of the Seneca County Common Pleas Court is hereby affirmed.
Judgment affirmed.
CUPP, J., concurs.
SHAW, J., concurs in Judgment only.
[1] City of Lakewood v. Papadelis (1987), 32 Ohio St.3d 1, 3.
[2] Id.
[3] Emphasis added.
[4] State v. Edwards, (1993), 86 Ohio App.3d 550, 554, citing Stateex rel. Niles v. Bernard (1978), 53 Ohio St.2d 31, 34.
[5] Id., citing City of Bryan v. Knapp Laboratories (1986),21 Ohio St.3d 64, 65.
[6] Id.
[7] Id. See, also, State v. Myers, (2002) 97 Ohio St.3d 335,2002-Ohio-6658, at ¶ 75, reconsideration denied, 2002-Ohio-7367,97 Ohio St.3d 1500.
[8] Edwards, 86 Ohio App.3d at 554, citing City of Lakewood v.Papadelis (1987), 32 Ohio St.3d 1.
[9] Focke v. Focke (1992), 83 Ohio App.3d 552, 555.
[10] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[11] State v. Orwick (2003), 153 Ohio App.3d 65, 69, 2003-Ohio-2682, at ¶ 13, quoting State v. Jenkins (1984), 15 Ohio St.3d 164, 222.
[12] State, ex rel. Steckman v. Jackson, (1994), 70 Ohio St.3d 420,436.
[13] State v. Chinn (1999), 85 Ohio St.3d 548, 569, 1999-Ohio-288, citing, e.g., State v. Lambert (1994), 69 Ohio St.3d 356, 356-357
(Pfeifer, J., concurring); and Steckman, 70 Ohio St.3d at 428-429.
[14] Steckman, 70 Ohio St.3d at 435-436.
[15] See State v. Veras (July 8, 1999), Cuyahoga App. Nos. 74416, 74466; State v. Fuller (Sept. 24, 1996), Richland App. No. 95 CA 66.
[16] State v. Ayers (Sept. 12, 2002), Cuyahoga App. No. 79134, 2002-Ohio-4773, ¶ 230 (Kilbane, J., concurring in part and dissenting in part.)
[17] Id.
[18] Brady v. Maryland (1963), 373 U.S. 83, 87, 83 S.Ct. 1194,10 L.Ed.2d 215.
[19] State v. Wiles (1991), 59 Ohio St.3d 71, 78.